# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SHANNA ROBERTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| LINCOLN NATIONAL | ) |
| LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Shanna Roberts, and for her claims and causes of action against Defendant, Lincoln National Life Insurance Company, states as follows:

### PARTIES

1. Shanna Roberts ("Roberts") is a resident and citizen of the State of Missouri.

2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln.

### JURISDICTION AND VENUE

3. Roberts brings her claim pursuant to the Employment Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

1

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Roberts was employed by Walmart, Inc., ("Wal-Mart") as an Assistant Manager.

10. Roberts' occupation, situated at the medium exertional level, required grasping and manipulating objects of varying size and weight, moving, lifting, carrying, and placing merchandise and supplies weighing up to 25 pounds alone, and traveling among other requirements.

11. Roberts' last physical date of work was July 16, 2019. Prior to her leave from work, Robert suffered from back pain.

12. Roberts suffers from a combination of impairments:

    a. Major depressive disorder;
    b. Bipolar disorder;
    c. Diabetes, Type II;
    d. Spinal Stenosis;
    e. Bulging disk at L4 and L5;
    f. Post laminectomy syndrome;
    g. Lumbar radiculopathy;

  h. Chronic sciatic pain;

  i. Diabetic gastroparesis;

  j. Thyroid tumors;

  k. Synovial cyst on left and right side of L4 and L5;

  l. Chronic migraines;

  m. Obstructive sleep apnea;

  n. Anxiety;

  o. High cholesterol; and

  p. High blood pressure.

13. In January of 2019, while on intermittent leave, Roberts began to investigate the cause of her chronic back pain. Roberts had suffered from unexplained back pain in October and November of 2018. The back pain began to intensify as months progressed. By the end of November 2018, Roberts' back pain was severe enough that she was unable to walk during her shifts and necessitated at least one emergency room visit where she was given an injection. Robert did not get relief from her pain from the injection.

14. In February 2019, Roberts was seen by Dr. Fortuna, DC, who manipulated her back and hips without pain resolution. Following Dr. Fortuna's treatment, Roberts went to see her primary care physician, who ordered an MRI and physical therapy.

15. Roberts began physical therapy and had approximately 20 visits. At the end of these visits, Roberts still did not have pain resolution.

16. In May 2019, Roberts underwent a lumbar MRI and was diagnosed with spinal stenosis and an adrenal gland cyst.

17. Roberts then sought treatment through pain management with Dr. Sean Clinefelter, MD. Dr. Clinefelter performed injections which included two nerve blocks and 2 weeks of bed

3

rest. Dr. Clinefelter determined that further injections would be fruitless. Roberts was then referred to a back surgeon.

18. Roberts was placed on another leave of absence in July 2019 from which, due to her impairments, she never returned to work. Roberts conditions continued to deteriorate, necessitating several specialist visits, further diagnoses, and finally a back laminectomy performed on March 11, 2020. Roberts back issues did not resolve following her back surgery.

19. Upon her leave from work, Roberts initiated a Short-Term Disability ("STD") Claim, which was paid in full. Following the STD exhaustion, Robert initiated her Long-Term disability ("LTD") claim. Lincoln, in initiating the LTD claim, focused primarily on Robert's combination of mental impairments instead of her impairments as a whole.

20. On January 22, 2020, Lincoln approved Robert's LTD claim, and stated "We have determined that you are disabled from bipolar disorder, major depressive disorder, anxiety and low back pain."

21. Wal-Mart sponsored a group long-term disability benefits plan ("Plan") for its participating employees.

22. The LTD Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

23. The Plan offered disability benefits to qualifying Wal-Mart employee Plan participants.

24. At all relevant times, Roberts has been a participant and covered person under the terms of the Plan.

25. Lincoln is the administrator of the Plan.

26. Wal-Mart delegated or attempted to delegate the function of issuing LTD claim determinations to Lincoln.

27. Wal-Mart and Lincoln entered into an administrative services contract through which Wal-Mart paid Lincoln for acting as claims administrator.

28. Due to her conditions, Roberts was forced to cease work because she became unable to perform the duties of her occupation.

29. Following her leave from work, Roberts applied for Social Security disability benefits.

30. The LTD policy provides that an Insured Person is entitled to disability payments if that person becomes disabled. Disability is defined in the policies in the same way and is as follows:

> **TOTAL DISABILITY** or **TOTALLY DISABLED** means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

31. The policies define "duties" as follows:

> **MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
> (1) are normally required to perform the Insured Person's Own Occupation; and
> (2) could not reasonably be modified or omitted.

32. On July 27, 2022, Lincoln sent a denial letter. In support of their denial, Lincoln referred Robert's claim to Dr. Stephen Broomes, MD, who authored a medical review finding that Roberts did not suffer from a single restriction or limitation.

33. Lincoln, additionally, had another doctor, Dr. Reginald Givens, MD, review Roberts' claim and provide a review. Dr. Givens found that:

    a. "Based upon review of the records and teleconference with Dr. Myers, the claimant has psychiatric impairments translating into restrictions and limitations of no work requiring sustained concentration and social interaction. In the

5

teleconference, Dr. Myers reported that the claimant is continued to have intermittent suicidal ideations and the mood is now stable and that the claimant is having mood swings. In addition, a letter dated January 8, 2021, from Dr. Myers stated that the claimant had been demonstrating frequent exacerbations of her bipolar disorder and that the claimant lack the ability to function successfully in a work environment at that time. In addition, the note from Dr. Mays that was dated 08/31/20 noted that the claimant was having problems regarding bipolar disorder and was frustrating and having more fatigue. On exam, the claimant's mood was anxious and the claimant's attention was distracted. Expected duration will be for a period of 2 months beyond the date of January 15, 2021. From a psychiatry perspective, the claimant would be unable to work in any capacity from January 15, 2021, to ongoing. The claimant would need to be reassessed approximately on or around March 15, 2021, for ongoing restrictions."

34. Lincoln secured another opinion from Dr. Sean Brimacombe, MD. Dr. Brimacombe opined:

    a. Claimant is currently seeking treatment for chronic low back pain. Claimant should currently be capable of sedentary duty with constant sitting, occasional standing, and occasional walking with changes in position as needed. Claimant should avoid lifting over 10 pounds. Updated records and restrictions should be obtained from Dr. Clinefelter in 3 months to allow time for claimant to pursue a permanent stimulator and recover.

35. On July 28, 2022, Roberts requested a copy of the claim file from Lincoln.

36. On August 2, 2022, Lincoln provided Robert's claim file of approximately 3,163 pages.

37. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD benefits.

38. Both the Employee Retirement Security Act ("ERISA") and the Policy itself require such denials to provide specific information, including:

    a. The specific reason(s) the claim was denied.

    b. Specific reference to the Policy provision(s) on which the denial was based.

    c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

    d. In the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically related exclusion or limitation involved in the decision.

    e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

39. Roberts has at all relevant times met the definition of "Disability or Disabled" under the Plan and is entitled to benefits.

40. Roberts has exhausted her administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

41. Roberts realleges the preceding paragraphs as if fully set forth herein.

42. Roberts is entitled to all unpaid and accrued LTD, as Lincoln:

    a. Made an unfavorable decision without substantial evidence;

7

b. Failed to perform adequate vocational reviews;

    c. Failed to refer Roberts' claim to qualified medical professionals;

    d. Failed to properly consider Roberts' medical impairments and resulting limitations;

    e. Failed to appropriately and logically respond to Roberts' arguments on appeal;

    f. Failed to provide evidence it relied upon when determining Roberts' claim following proper request; and

    g. Issued an unfavorable decision that was arbitrary and capricious.

43. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Roberts is entitled to an award of actual damages for losses suffered.

44. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

45. Lincoln has not satisfied its obligation to pay Roberts LTD benefits.

46. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Roberts prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

47. Roberts realleges the preceding paragraphs as if fully set forth herein.

48. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

49. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

50. Lincoln, the Plan's designated claims administrator, is a fiduciary.

51. Roberts participated in and benefitted from the Plan as previously indicated.

52. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with Wal-Mart.

53. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

54. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

55. Lincoln breached its fiduciary duty in:

   a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

   b. designating Roberts' claim as primarily, a mental health impairment. A competent review of the claim would result in a diagnosis that considers the entirety of Roberts' impairments.

   c. Purporting to call something an "Independent Medical Review" but paying a physician to arrive at a conclusion already decided upon: a conclusion that supports the denial of the claimant's benefits;

d. Relying on an implausible medical review to further its own interests; and

   e. Purporting to hire independent medical reviewers but actually paying physicians to produce an opinion that aligns with its own interests.

56. Lincoln denied Roberts LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

57. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Roberts and the Plan's participants and beneficiaries generally.

58. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

59. Lincoln's violations of regulations alone allow Roberts the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

60. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

61. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Roberts prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Paul J. Taylor
Paul J. Taylor, Mo. #72159
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. #64568
103 W 26th Ave., Ste. 290
North Kansas City, MO  64116
P: 816.883.4142
F: 816.792.3634
ptaylor@burnettdriskill.com
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF